**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| TAYLOR THEUNISSEN, M.D., and ALIREZA SADEGHI, M.D.,<br><br>Plaintiffs,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>Defendants. | Case No. 20-447<br><br>**JURY DEMAND** |

**AMENDED COMPLAINT**

By way of this Complaint, Plaintiffs Taylor Theunissen, M.D. and Alireza Sadeghi M.D. ("Plaintiffs") bring this action against Aetna Life Insurance Company ("Aetna" or "Defendant").

1. This is an action concerning Aetna's under-reimbursement of Plaintiffs for post-mastectomy breast reconstruction surgical services.

2. Aetna was the insurer of the Entergy Plan under which Plaintiffs' patient was a plan beneficiary.

3. Plaintiffs were out-of-network providers, meaning that they did not participate in Aetna's network. Aetna entered into in-network exceptions with Plaintiffs for post-mastectomy breast reconstruction surgeries. Aetna promised that Plaintiffs' patient would be responsible only for in-network cost-sharing requirements.

4. After Plaintiffs performed the pre-authorized breast reconstruction surgeries under these in-network exception agreements, Aetna breached the in-network exception agreements and refused to apply the in-network exceptions. Instead, Aetna reimbursed Plaintiffs based on what it said was a "recognized charge" rate applicable to out-of-network providers.

5. Aetna also did so notwithstanding that post-mastectomy breast reconstruction is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), which requires group health plans to cover post-mastectomy breast reconstruction surgery.

6. The patient was initially diagnosed with breast cancer and underwent a mastectomy. She underwent breast reconstruction. On August 27, 2018, she underwent a revision of her reconstructed breasts. On August 13, 2019, she underwent a revision of her reconstructed breasts to correct deformities.

7. After the breast reconstruction surgeries, Plaintiffs submitted invoices in the form of CMS-1500 forms as required to Aetna for a total amount of $275,000.00. Aetna reimbursed Plaintiffs only $23,883.17, leaving an unreimbursed amount of $251,116.83.

**JURISDICTION**

8. The Court has jurisdiction over Plaintiffs' direct claims under 28 U.S.C. § 1332(a) and (c) (diversity). Plaintiff Taylor Theunissen, M.D. is domiciled in Baton Rouge, Louisiana, East Baton Rouge Parish. Alireza Sadeghi M.D. is domiciled in Metairie, Louisiana, Jefferson Parish. With respect to 28 U.S.C. § 1332(c), Defendant Aetna Life Insurance Company's principal place of business is Hartford, Connecticut. Defendant Aetna Life Insurance Company was incorporated in Connecticut. The parties are diverse and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

9. The Court has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of this Court, and Aetna systematically and continuously conducts business in the State of Louisiana, and otherwise has minimum contacts with the State of Louisiana sufficient to establish personal jurisdiction over it.

10. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Aetna transacts business in the Middle District of Louisiana; (b) Aetna conducts a substantial

amount of business in the Middle District of Louisiana, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the Middle District of Louisiana; and (c) Plaintiffs transact business in the Middle District of Louisiana.

## PARTIES

11. Plaintiff Taylor Theunissen is a Board-Certified Plastic Surgeon. He graduated from the LSU Health Sciences Center Medical School and completed his residency in orthopedic surgery. He then completed an additional residency at the University of Nebraska Medical Center in plastic and reconstructive surgery. Dr. Theunissen completed fellowship training in craniofacial plastic surgery at Stanford University. He is Associate Professor at LSU and Tulane University medical schools. His principal office is in Baton Rouge, Louisiana.

12. Plaintiff Alireza Sadeghi M.D. is a double-Board-certified Plastic Surgeon and reconstructive microsurgeon. He graduated from the Karol Marcinkowski University of Medical Sciences, where he received his Ph.D. He completed his internship and residency in general surgery at SUNY Downstate Medical Center, where he also served as Chief Resident. He then completed an additional residency at LSU Health Sciences Center in plastic and reconstructive surgery, and again served as Chief Resident. His principal office is in New Orleans, Louisiana.

13. Defendant Aetna Life Insurance Company is a health care insurance company. Its principal office is in Hartford, Connecticut.

## FACTUAL ALLEGATIONS

14. On August 27, 2018, Plaintiffs' patient underwent bilateral breast reconstruction, inferior epigastric artery flap surgery (identical to the DIEP procedure except it was superficial, not deep), excision of fat necrosis, and abdominal donor site revision. Drs. Theunissen and Sadeghi performed these surgeries as co-surgeons.

15. Prior to the surgery, Aetna approved coverage for the surgeries in this case and granted Plaintiffs an in-network exception. It stated: "This service is approved at an in-network benefit level. The member will be responsible only for in-network cost-sharing requirements."

16. This letter also stated that Aetna had verified that the patient was eligible for coverage under the plan, that the Plan provided coverage for the surgery, and that the surgery was medically necessary.

17. Aetna's in-network exception agreement was a contractual obligation between Aetna and Plaintiffs.

18. After performing the breast reconstruction surgeries, Plaintiff Sadeghi submitted invoices on CMS-1500 forms to Aetna, as required, for $95,000.00. The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| 19366-62-RT | $65,000.00 | $1,071.62 |
| 15734-62-RT | $25,000.00 | $3,659.69 |
| 38760-62 | $5,000.00 | $249.92 |
| **Total** | **$95,000.00** | **$4,981.33** |

CPT codes 19366 means breast reconstruction. CPT code 15734 is a flap procedure. CPT code 38760 means radical resection of lymph nodes. Modifier -62 means a co-surgeon.

19. After performing the breast reconstruction surgeries, Plaintiff Theunessen submitted invoices on CMS-1500 forms to Aetna, as required, for $130,000.00. The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| 19380 | $30,000.00 | $1,742.00 |
| 19366-62-RT | $20,000.00 | $1,071.62 |

| | | |
|---|---|---|
| 15757-62-RT | $30,000.00 | $4,807.93 |
| 38760-62 | $50,000.00 | $4,198.69 |
| **Total** | **$130,000.00** | **$11,820.34** |

20. On August 13, 2019, Plaintiff Theunissen performed additional breast reconstruction surgery on the patient. He performed bilateral revision of the reconstructed breasts, one with implant exchange, excision of excess tissue, and capsulorrhaphy (surgical repair of mis-positioned implant); and the other with fat grafting.

21. Prior to the surgery, Aetna approved coverage for the surgeries in this case and granted Plaintiffs an in-network exception. It stated: "This service is approved at an in-network benefit level. The member will be responsible only for in-network cost-sharing requirements."

22. This letter also stated that Aetna had verified that the patient was eligible for coverage under the plan, that the Plan provided coverage for the surgery, and that the surgery was medically necessary.

23. Aetna's in-network exception agreement was a contractual obligation between Aetna and Plaintiffs.

24. After performing the August 13, 2019, breast reconstruction surgeries, Plaintiff Theunessen submitted invoices on CMS-1500 forms to Aetna, as required, for $50,000.00. The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| 19380-RT | $30,000.00 | $3,750.00 |
| 19340-LT | $15,000.00 | $2,404.00 |
| 19371-LT | $5,000.00 | $927.50 |
| **Total** | **$50,000.00** | **$7,081.50** |

CPT code 19340 means breast reconstruction.

25. Aetna stated in its Explanation of Benefits ("EOB") for the surgeries that the "charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement."

26. Aetna further stated in a letter dated May 29, 2019, that the authorization for the surgeries performed on August 27, 2018, was approved at the out-of-network level. Aetna indicated that it paid based on what it called the "Recognized Charge." This rate was not the amount promised by the in-network exception agreement.

27. In a letter dated August 29, 2019, Aetna stated that it had paid Dr. Theunissen's invoices as out-of-network and based on what Aetna called the "HIAA90 rate." Paying any out-of-network amount represented a breach of the in-network exception agreement.

28. Moreover, the "HIAA90" rate (the "90" means the percentile) was fictional unless it was based on an outdated amount, because that is a database not based on 2018 or 2019 billed charges. HIAA was an abbreviation for the Health Insurance Association of America. HIAA had developed a database of purported billed charges from several reporting insurance companies. Subsequently, the database was sold to United Healthcare Insurance Company, operated by its Ingenix unit, and licensed to other insurers.

29. As a result of a class action lawsuit that settled in 2010, the New York Attorney General's Office created the "Fair Health" database, and Ingenix turned over its "HIAA" database and was out of the billed-charges-database business. The new database is called the "Fair Health" database. As of 2010 there was nothing that could be called the "HIAA" database.

30. Aetna could not have reimbursed Dr. Theunissen based on the "HIAA90" rate. In any event, any such out-of-network reimbursement rate was a breach of the in-network exception agreement.

31. Aetna also indicated that it applied the multiple surgical rule ("MSR") and co-surgeon rule. It did so incorrectly, however. It applied the MSR to the primary procedure, not the

secondary procedure. It also did not apply a straight percentage discount but a "concurrency ratio utilizing relative value units." The procedure with the highest RVU may not be the highest billed procedure or the primary procedure. It applied the co-surgeon discount as a percentage of one co-surgeon; the proper calculation is to calculate the discount as a percentage of both co-surgeons.

32. In a letter dated November 12, 2019, Aetna stated that it had paid the August 27, 2018, invoices based on Ingenix. As alleged above, Ingenix no longer existed. On information and belief, the amounts Aetna paid were not equal to the 90th percentile of Fair Health.

33. The amount paid to Dr. Theunissen for the August 13, 2019, breast reconstruction surgery was also, on information and belief, not equal to the 90th percentile of Fair Health. It further represented a breach of the in-network exception agreement.

**COUNT I**

**BREACH OF CONTRACT**

34. Aetna entered into an agreement with Plaintiffs under which it granted in-network exceptions for each of the surgical procedures to be performed by Plaintiffs on their patient.

35. The parties entered into valid contracts. These contracts were expressed in letters dated January 5, 2018, and July 24, 2019. The letters stated: "This service is approved at an in-network benefit level. The member will be responsible only for in-network cost-sharing requirements."

36. Aetna failed to perform its obligation under these contracts to pay at the level required under these agreements because Plaintiffs were not paid at the in-network benefits level. Instead, as Aetna admitted, it paid at the out-of-network benefit level.

37. As a result of Aetna's breach, Plaintiffs sustained damages in the amount of $251,116.83.

## COUNT II

## DETRIMENTAL RELIANCE (LSA-CC ART. 1967)

38. Aetna is obligated by the promise it made in granting the in-network exceptions to Plaintiffs. Aetna knew or should have known that this promise would induce Plaintiffs to rely on it to their detriment. The promises were made in the form of two authorization letters that are sent out in response to surgical providers' pre-authorization requests. Aetna knew that when such surgical providers, such as Plaintiffs, received the authorization to proceed with surgery – and in this case specifying that the reimbursement rate would be based on an in-network exception – they would reasonably rely on the letters to proceed with surgery.

39. Plaintiffs reviewed Aetna's authorization letters granting the in-network exceptions. They scheduled and performed the surgeries on the patient in detrimental reliance on these authorization letters containing the representations.

40. In so reasonably and detrimentally relying on Aetna's in-network exception letters prior to the patient's surgeries, Plaintiffs sustained damages in the amount of $251,116.83.

41. Aetna should not be heard to take a position contrary to its prior acts or representations.

**WHEREFORE**, Plaintiffs demand judgment in their favor against Aetna as follows:

(a) Awarding damages for breach of contract;

(b) Awarding damages for detrimental reliance;

(c) Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees and costs and expenses in amounts to be determined by the Court;

(d) Awarding prejudgment interest; and

(e) Granting such other and further relief as is just and proper.

Dated: July 29, 2020

/s/ Kernan Hand
HAND LAW FIRM
110 Veterans Memorial Blvd.
Suite 170
Metairie, LA 70005
Phone (504) 539-HAND (4263)
Cell (504) 908--9539
Fax (504) 539-4265

/s/ Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

/s/ Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

*Attorneys for Plaintiffs Taylor Theunissen, M.D. and Alireza Sadeghi M.D.*